The first case is In Re Theripion, 22-1346. Ms. Browning, whenever you're ready. Good morning, Your Honors. May it please the Court, I've reserved five minutes for rebuttal. There are two issues that I want to focus on today. The first one is the lack of motivation, and the second one is the Board's failure to consider the unpredictability of the art when evaluating the evidence. Before diving into those issues, however, I want to point to three aspects of the state of the art that the Board failed to take into account, which we believe led to the legal and the factual errors. The first one is that the record evidence does not show that there was a problem to be solved, meaning that the commercial APOA1-FC fusion protein, which had no linker, was not known to have low cholesterol efflux activity. The second one is the evidence shows that a person of skill in the art would not have believed a linker to be necessary for this type of fusion protein because it was recognized that the FC hinge region acts as a natural linker. The third is that the Board failed to appreciate the unexpected nature of the invention because the Board did not address or otherwise take into account the evidence that was submitted showing that the impact of linker length on the function of a fusion protein component was unpredictable. How do we know, as a general matter, what the Board failed to consider? Normally we assume that the tribunals we review have the evidence in front of them and that they consider it. We don't require them to go point by point and talk about every piece of evidence in order to assume that they factored it in. Yet your argument mostly is it's a pretty short opinion, and we threw in a lot of evidence that they don't specifically address, so we must assume that they didn't really evaluate it. I think there's two responses to that. The first is when you look at the motivation, they really only found they used the claim as a map, and they looked at the prior art to try to find the elements that were in that claim. There's no reason why anybody would have started adding a linker to the existing fusion protein, much less a longer linker. So what does the art that they used really show you? It points out that there are such a thing called linkers and that you certainly can use a linker when you're modifying proteins, but they don't give you any reason for why you would start that process in the first place. Do you believe your argument is better on motivation to combine or on unexpected results? Which do you think is the better argument on it? I think they're equally strong, but I think as far as not addressing the evidence of record, the unpredictability of the art, that they clearly just did not address at all. And they relied on, for their references, they relied on, remember, Leadbetter as the sole reference to show reasonable expectation of success. This is a DNase protein. It's not related to the APOA1. That's one thing, but on top of that, they didn't address another art in the record, Dwyer, which is also related to the DNase, and that particular reference, that study, showed no impact of linker length on the activity level of the fusion component. So I think that really highlights the inconsistency. On the one hand, the Patent Office wants to rely on these references that aren't necessarily related to the APOA1 fusion protein, and yet, on the other hand, when we show that the art was very unpredictable with respect to adding linker length and what impact the linker length might have on the activity level of the fusion protein, then they discount and they don't even mention this reference. And Leadbetter itself, by the way, cited to Dwyer, and in the very paragraphs that are relied upon by the Patent Office, and indicates that its own results are unexpected in view of Dwyer. If we agree with you that the Board doesn't seem to have adequately considered or at least told us how it considered some of these references, for instance, the unpredictability, wouldn't that suggest that we should remand and have, I don't know, maybe the examiner resume the prosecution? Because you seem to ask us to just go ahead and grant your claims, but I'm a little concerned about the mismatch between your arguments and the relief you're requesting. I think that is a fair point with respect to the unpredictability of the art, if you need to get to that point. But I think the failure to show even a motivation to begin the process, to even fail to show a motivation as to why you would start modifying the fusion protein in the first place, I think that is also something you could simply reverse on. They didn't even get to point one. So, I mean, turning to the motivation part, they did use the claims as simply a map. Let's look at Nutsen, for example. That's the primary reference. It doesn't express a preference for using. It has one throwaway statement that just simply says, the APOA1 compounds described above may be fused directly or via a peptide linker. It doesn't have a preference for using a peptide linker over no linker. It certainly doesn't narrow the possible universe of linkers. It doesn't express any guesses on what activity level might or might not occur from using a linker. And Nutsen has no data, right? It never did make an example. Whereas all the studies that we provided to the patent office were based on actual studies and real-life evidence and experimental evidence. So, of course, that should be more relevant to the determination. Same with Loggerstat. Loggerstat was really devoted to shortening the APOA1 peptides and using just a very small snippet of that for a different functionality. It had to do with inducing blue case uptake into the cells. It has a very general discussion of the existence of numerous linkers. And I think you really need to look at that section of Loggerstat where it basically just says, you know, you can use no linker. You can use a short linker. You can use a linker of 1 to 5, 1 to 10, 1 to 20, 1 to 100. And it has one in there that says 10 to 50. But it doesn't express any preference to use any one of those things, including no linker. And it certainly doesn't tell you what the results might be if you did. There's just no guidance to that whatsoever. Simply because one of skill in the art could do something is not sufficient. The patent office needs to show that they actually would have done that with some reasonable expectation of success. Bacchus fares no better. Bacchus is devoted to the ERBB-based ligand-binding molecules. It actually doesn't even say the linkers can be bound to the fusion protein. It has to do with fusion partners, fusion moieties. And again, it just has a throwaway statement that broadly refers to one or more linkers. It doesn't give any guidance. It didn't create or produce any of these linkers. And finally, so, you know, what do they really add, right? They just tell you that there's a possibility out there that you could use a linker, but there's no reason to start using a linker. Finally, they add lead better to the mix. I'm a little confused. Are you saying that they had to show that somebody would be motivated because this would be an improvement over the prior art? Well, there could be multiple reasons,  that doesn't have to be shown to have a motivation to combine, right? You don't have to show that because this may work okay, that the alleged combination would be an improvement. I think we just issued a decision on that within the last four or five months. So, I mean, they just have to show that there's a general motivation to combine these, which would be it works better, right? Well, they have to show at least a general motivation that somebody would take the existing protein and then start doing something to it for some reason. Start adding a linker, not adding a linker. There's no reason in the… There's no reason that it works better. Well, as it turns out, right, after a lot of experimentation. No, I get that, but that's not… I mean, you're… I'm having a little trouble separating your motivation to combine with your unexpected results argument. And your unexpected results argument, at least to the extent the board didn't really address them very well or at all, I think has some fair points. But I'm a little confused about why you… It doesn't seem like there's any… Well, maybe there's a dispute, but at least for purposes of this, I don't see any contention that the prior art the board cited shows all the elements. You're just arguing that there's no reason to combine it. But when you say there's no reason to combine it, the board looked at all of this and said, sure, somebody would combine all these elements together because it would work better overall. You're saying, well, the references don't teach that, but I think we've said the references themselves don't have to teach that. The references don't themselves maybe have to teach that if you did this, it would necessarily be better. But there has to be some reason to motivate, some reason to alter or change what the existing protein is. And even say you wanted just to change the protein because you just wanted to change the protein, why would you add linkers to it? There's really no motivation for why you would start adding linkers to this particular fusion protein. Maybe you would start modifying the different protein components. I think we have that argument. You're into your rebuttal. Do you want to say the rest of it? Unless you have any questions, I will reserve the remainder of it. Is it correct that you conceived that all the elements of your claim were known in the prior art? Yes. Okay. Thank you. Good morning, Your Honors. May it please the Court. The invention here is really much simpler than you might think given the technology. We're talking about taking an APO1 protein and then fusing that to an FC fragment of an antibody to improve its blood serum. I think we understand the facts, or at least as much as I can ever understand these facts. But could you just get right to the unexpected results thing? Because I think that's your most significant hurdle here. They allege unexpectedly superior results here. And the Board, based on their findings, that they have improved activity in their studies of APO1 approaching the wild type and then sometimes exceeding it when they have the FC fragment added. The Board found that that was enough to provide a presumption of nexus, but the Board found that that simply just wasn't enough to overcome the strong case of obviousness made out by the prior art. What about the entire group of evidence that the Board didn't address? I know you try to make a forfeiture argument, but I don't really see that as viable. And then you go on in your red brief and I think make a very convincing argument about why none of those references are helpful, but you don't get to make that argument for the Board. You don't get to save the Board when they didn't write that into their opinion. Well, I think in fairness, our red brief says that explains why they forfeited an argument based on those references. Their brief to the Board cites the Leadbetter's second declaration. And then it cites a whole bunch of other studies. And then if you look to Leadbetter's declaration, the paragraph they cite, it contains a string cite for a naked assertion that there's unpredictability in the art. That just should not be sufficient to raise an issue to the Court. And then it follows with the sentences, in view of such studies, coupled with the lack of any relevant blah, blah, blah, skilled artisan would not be able to reasonably predict. I mean, why isn't that enough? It's here's this declaration that includes a lot of studies. And by the way, it doesn't just cite Leadbetter and make you go look at that declaration. It includes it in their brief, all these studies, right? I don't believe that it did. But even if it let's assume it did. Let's assume that it had the string cite. I'm looking at my bench memo. It has the quote in it. And I assume it's accurate. But it cites all these studies. And then it follows with the sentence that says, these studies show unexpected results. And the Board didn't address any of those studies. Well, what they're saying the studies show is an unpredictability in the art. But the Board didn't buy into that argument. Because, for example. Where in the Board's decision does it specifically address all of this? Again, Your Honor, the Board does not specifically address Dwyer and those other references. If we find that's there, we have to send it back, right? No, I don't agree with that. Because the Board said that they didn't find, the Board did not find the prior art to be as unpredictable as they're alleging. Whether they walked through all those references or not, they didn't agree with that. How do we know that when they didn't even discuss any of these? I know the Board is not required to address every single piece of evidence. But it seems like there were two categories of evidence here. One category showing the studies that showed this was a good result. And then this other category that showed nobody would expect these things to accomplish this. And they didn't address that second category at all. Why isn't that error? I don't believe that's error. Because what we're looking at here is just a simple optimization of link or link. If you look at the primary reference, Knudsen, which is also owned by Therapion, you will see that Knudsen, these claims were specifically drafted to overcome Knudsen. So that Knudsen wouldn't anticipate the claimed invention. So they've alleged that Knudsen's peptide linker, based on a definition of peptides being nine amino acids or shorter, that Knudsen's linker must be nine amino acids or shorter. So they've specifically claimed something that's 10 to 40 amino acids. But when you look to Lagerstede, Baucus, and Leadbetter, you'll see that that's a typical link for a linker. It's in that 10 to 40 range. Do you agree that the Board didn't discuss the comparative data in its decision? Do you agree with that premise? I'm sorry? Do you agree that the Board did not discuss the comparative data in its decision? Do you agree with that? I don't agree with that because if you look to the Board's decision, they spent an entire page going through what the secondary consideration of evidence was. If we look to page 9 of the Board's decision, which is APPX10, you'll see the Board discusses what the evidence is that's found in the specification for the alleged unexpected results. And then you'll see in this second paragraph that follows the further studies that they've done where they've tested various linker links. And again, that's something people of ordinary skill in the art do. That's a results-effective variable. Linkers perform two functions. Linkers bind two things together. And linkers also can be adjusted. So your opinion is that appendix page 11 is sufficient analysis on unexpected results. Is that what you're contending? The Board said that that data was not sufficient to overcome the expectation of success and the results shown, the strong case of obviousness shown, in references like Bacchus or Ledbetter. I think I'm looking for a yes or no answer on my question. Do you contend that this is sufficient analysis of unexpected results on appendix page 11? Yes, I do. Because you don't read this page just in and of itself. This page must be read in context of the entire Board's decision. And when you look at the entire Board's decision, and you look at their discussion of Ledbetter and Bacchus here, what they show is, particularly with Ledbetter, that as you adjust linker link, which is a results-effective variable, as you adjust that, you will see variations in the amount of activity of your protein in interest, in this case APOA1. Right. The Board has a couple sentences about Ledbetter further down on page 11, and they point out that Ledbetter is a DNase enzyme, and then they just conclude that one of skill in the art would understand from that that there would be a similar effect of the linker link on the biological activity we care about in APOA1. There's no explanation as to how they get from how one of skill in the art would take what they learned about DNase in Ledbetter to make it obvious that it would have the same impact in what we care about. Where's the explanation of that? I think that what they're talking about here is, if you look at the sentence beginning with specifically, Ledbetter compares the activity of an FC fusion protein with a Gly-4, CR-4 peptide linker, so that's a 20-amino acid linker, to the same fusion protein lacking the FC linker, and they see that they have a dramatic increase when they've increased, when they've used a linker that's 20 amino acids long. And so the board relies on that, the board cites that as a basis for concluding that persons of ordinary skill in the art reasonably expect that as you adjust linker link, as you optimize this result-effective variable, that you will find exactly what they've alleged to do here, which is you will find optimum linker. But where's the analysis of the difference between DNase and APOA1? Where's the analysis? You've already admitted it's not there. Dwyer and the other prior art that suggests linker link effect is unpredictable. They just seem to leap from Ledbetter to, well, one of skill in the art would think that that same principle would apply always. No. In fairness, what they said about Ledbetter and Bacchus as well is that when they raised similar arguments to the board, the board said, no, the difficulty here is that we're not talking about what the protein of interest is. We're just talking about using a linker to add an FC fragment to the protein of interest because FC fragments were known in the prior art to increase stability in the bloodstream, to increase half-life up, and thereby increase bioavailability of your drug of interest. And so this was a known thing to do, and it was known to adjust linker link, and I'd like to correct something that my friend across the aisle here said about Lagersted not providing any guidance or any reason why they would use the 10 to 40 amino acids. Ledbetter expressly states, if you look at the record at APPX 2183, paragraph 266, that these linkers are typically, that's the word he uses, typically 1 to 50 amino acids. And then he talks about typically 1 to 40 amino acids. And so those are the words that are used, typically. It's not you're asked to pick this length of a linker from the air. You're being told that this is the typical length. So counsel, would you agree that your argument is better on motivation to combine the unexpected result? I don't. I understand that the court believes that, but I think both arguments are strong. I think that, you know, I concede that the board, sorry, that this court is concerned that the board didn't write more about the unexpectedly superior results and didn't go into each of these references. But I don't believe the board was required to do that. Well, I'm still struggling with that a little bit. And I completely agree with you that you are not, we don't have a rule that the administrative agency has to discuss every single specific piece of evidence in support of arguments. But let's just draw this back from these specific references and think of it in a more general hypothetical. If there's two different categories of evidence and one supports, shows why these superior results were sustained, and one shows that nobody thought these superior results could have been obtained, and they only – and it's a combination of those two things that suggests that on the appellant side that unexpected results occurred because nobody thought this would have happened and then it did happen. If the board only discusses the evidence showing it did happen, hasn't it made an error in not discussing the evidence showing nobody thought it would have happened? And again, divorce it from the facts of this case. Those are those two categories. They're non-overlapping. Nothing in the evidence the board cited here I don't care about. If they fail to discuss one of those categories, haven't they made an error? I don't believe that they have under these circumstances, and here's why. Because they've made arguments. There are cheap arguments that they actually made before the board about why – I don't want to talk about the specifics of this case. This is why I asked it as hypothetical. If there's two categories of evidence, one category is people – skilled artisans wouldn't have expected this to happen because it's unpredictable and nobody would have known this. And then there's studies testing this out and saying, oh, this did happen. Here's why it does have these improved results. If the board only looks at the improved results and says, well, this shows that people would have expected this success, haven't they erred by not looking at the evidence that shows skilled artisans wouldn't have thought this would happen? Well, first of all, thank you for that clarification. I'm not asking you to concede your case. This is a hypothetical. No, I understand, and I would even say in that hypothetical it would depend, and here's why. Because what you're in some sense making is a teaching away argument. You're saying that this is unpredictable, we wouldn't expect this to happen, and the board should have considered that. But if – and whether the board errs by not going through that evidence I think turns on the facts of an individual case. But it can be error. I will concede that. Okay, you're out of time. Do you have any last thoughts? No. Do your honors have any further questions? Thank you. Thank you. Ms. Browning, you have about four and a half minutes. Thank you. So we disagree that the board analyzed the unpredictability aspect of the case, but if you don't have any more questions about that, I would like to address some of the motivation issues if that's okay. So the patent office said that adding a linker is routine, but that is already assuming that you have a reason to add a linker in the first place. And certainly they don't mention why it would be obvious to add a longer linker to a fusion protein. So even the quote pointed to in Leadbetter going 1 to 50 or 1 to 40, that's a very broad range, right? That's certainly not the extended linker that was claimed. And many of the studies that we pointed to did tend to drift towards showing that shorter linkers would be better or adding no linkers at all, especially where there was the FC protein used. And as far as any kind of optimization argument, that was never raised or considered by the board below, so that would be – we would consider that to be a new argument as well. Thank you. Are there any other questions? Case is submitted. Thank you.